FILED
United States Court of Appeals
Tenth Circuit

September 25, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LYNN ROGERS,

        Plaintiff - Appellant,

v.

ANDRUS TRANSPORTATION
SERVICES, a Utah corporation,

        Defendant - Appellee.

No. 06-4221

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH[*]
(D.C. NO. 2:04-CV-994-PGC)**

Brian L. Olson, Gallian, Wilcox, Welker & Olson, St. George, Utah, for
Plaintiff - Appellant.

Richard Ranney, Ranney & Peatross, St. George, Utah, for Defendant - Appellee.

Before **HARTZ**, **EBEL**, and **TYMKOVICH**, Circuit Judges.

**HARTZ**, Circuit Judge.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument.

Plaintiff Lynn Rogers appeals from the district court's denial of his motion for a continuance, dismissal of his complaint without prejudice, and denial of his motion for reconsideration. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.     BACKGROUND

According to Mr. Rogers, Andrus Transportation Services (Andrus) offered to hire him as a driver but revoked the offer because he had a disability. He filed a complaint with the Equal Employment Opportunity Commission, which issued a right-to-sue letter in late July 2004. His subsequent federal-court lawsuit sought damages for an alleged violation of the Americans with Disabilities Act, 42 U.S.C. § 12101-12213. Unfortunately, more pressing legal problems arose for Mr. Rogers at that time. As his lawyer later explained:

> In close proximity to the time that the Notice of Right to Sue was issued, [I] became aware that [Mr. Rogers] had been incarcerated under criminal charges in the state of Texas. However, *at that time, [Mr. Rogers] believed that he would be released in approximately December 2004.*
>
>       Consequently, given the 90 day deadline on [the right to sue], [I] allowed some time to pass but, protecting. . . [Mr. Rogers's] rights, filed a lawsuit on or about October 26, 2004. Thereafter, in hopes that [Mr. Rogers] would be released from his incarceration, counsel waited until the end of the statutory deadline for service. . . . *At that time, [Mr. Rogers] was indicating his belief that he would be released from incarceration in the spring of 2005.*

Aplt. App. at 6-7 (emphasis added).

On March 28, 2005, the parties submitted a planning-meeting report with a proposed scheduling order. Despite another change in Mr. Rogers's anticipated release date – to October 2005 – his lawyer never raised any concerns about prosecuting the case while Mr. Rogers was in prison or about the setting of the five-day jury trial for May 22, 2006. Instead, he sent some written discovery to Andrus and remained silent even after Mr. Rogers's October 2005 anticipated release date came and went. Two months later he prevailed on Andrus to agree to a stipulated motion to amend the scheduling order. The motion revealed to the court for the first time that Mr. Rogers was incarcerated; it stated that his incarceration would "continue for a period of 3 to 6 months." R. Doc. 10 at 1. The court amended some of the deadlines and rescheduled the trial for September 11, 2006.

Once again, however, Mr. Rogers did nothing to prosecute the case. When the district court failed to receive any motions by the deadline in the amended scheduling order, it issued an order on June 22, 2006, directing a joint status report "indicating the parties' further intentions to proceed with this case." R. Doc. 13. The report, which was filed on July 7, 2006, demonstrated that nothing had been done to prosecute the case from the time of the amended scheduling order. Also, the report stated that "[a]lthough it is possible that [Mr. Rogers] may be released by the September trial date, counsel believes it is

unlikely.  Consequently, [Mr. Rogers] will be filing a motion to continue the trial date and [Andrus] will oppose."  R. Doc. 14 at 2.

Mr. Rogers's motion, dated July 11, 2006, requested an order "continuing the currently scheduled trial date for 90 to 120 days.  This [m]otion is made upon the grounds that *[Mr. Rogers] cannot properly prosecute his action because he is currently incarcerated in the state of Texas*."  Aplt. App. at 4 (emphasis added). On August 9 the district court denied the motion to continue, dismissed the complaint without prejudice, and closed the case.  Mr. Rogers's later motion for reconsideration was also denied.  This appeal followed.

## II.   CONTINUANCE

"We review the district court's decision to deny a continuance for abuse of discretion and do not reverse unless we conclude that the denial was arbitrary or unreasonable and materially prejudiced the appellant."  *United States v. West*, 828 F.2d 1468, 1469 (10th Cir. 1987).  Further, "the determination whether the denial of a continuance constitutes an abuse of discretion turns largely upon the circumstances of the individual case."  *Id*. at 1469-70 (internal quotation marks omitted).  The relevant factors to be considered include:

> the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; the need asserted for the continuance and the harm that appellant might suffer as a result of the district court's denial of the continuance. . . .  No single factor is

-4-

determinative and the weight given to any one may vary depending on the extent of the appellant's showing on the others.

*Id.* at 1470.

The district court did not abuse its discretion in denying Mr. Rogers's July 11, 2006, motion for a continuance. First, it properly questioned whether Mr. Rogers had shown diligence. As the court found: "Although Mr. Rogers may have been diligent with his filing deadlines, it does not appear he has been so diligent in considering the court's calendar." Aplt. App. at 21. Second, the court reasonably believed that a 120-day continuance likely would not have accomplished anything because Mr. Rogers's "official release date will not be until June 5, 2007." *Id.* at 22. Third, the court disagreed that neither Andrus nor it would be inconvenienced, pointing out that the court

has had this trial on its calendar for nearly two years. As a result, the court has had to schedule other hearings around this reserved trial time. . . . A continuance, when the court has kept this schedule for the past two years and the defense is clearly ready to begin trial, is thus inconvenient both to the court and to the defense.

*Id.* at 23.

Finally, Mr. Rogers's attendance at trial was not essential. Although he would have preferred to attend, he could have preserved his testimony by deposition. *See* Fed. R. Civ. P. 30(a), 32(a)(3)(C). And, as the court stated, "[I]t is not clear why Mr. Rogers was unable to proceed with interrogatories, depositions, and other discovery in this case, much of which could have been

handled by a simple telephone call to his attorney or perhaps a deposition in the Texas facilities." Aplt. App. at 23.

## III. DISMISSAL

When Mr. Rogers represented that he would not be ready for the September 2006 trial and the district court denied his motion to continue, it also dismissed his complaint without prejudice. Because the court's order closed the case, it is appealable. *See Petty v. Manpower, Inc.*, 591 F.2d 615, 617 (10th Cir. 1979). Despite Mr. Rogers's claim to the contrary, Andrus was not required to file a motion to dismiss. "Rule [41(b)] has long been interpreted to permit courts to dismiss actions sua sponte for a plaintiff's failure to prosecute. . . ." *Olsen v. Mapes*, 333 F.3d 1199, 1204 n.3 (10th Cir. 2003).

The factors to be considered by the district court in the exercise of its discretion include:

> (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions.

*Id.* at 1204 (internal quotation marks omitted). "[D]ismissal is warranted when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits." *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, No. 05-4192, 2007 WL 2285901, at *7 (10th Cir. Aug. 10, 2007) (internal quotation marks omitted).

We review an order of dismissal for failure to prosecute under an abuse-of-discretion standard, and "[u]nder what circumstances such a dismissal would be justified, or to the contrary found to be abuse of discretion, must depend on the procedural history of the particular cases involved." *Petty*, 591 F.2d at 617. "When the term 'discretion' is involved as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *Joplin v. Sw. Bell Tel. Co.*, 671 F.2d 1274, 1276 (10th Cir. 1982) (internal quotation marks omitted). We proceed to consider the *Olsen* factors.

First, there was prejudice to Andrus, which had prepared for trial and wished to conclude the proceedings. Having to prepare for trial on multiple occasions can be a considerable burden, wasting time and resources; Andrus also has a legitimate interest in bringing the matter to closure within a reasonable time. Likewise, Mr. Rogers's failure to prepare had unnecessarily interfered with court business, requiring other matters to be delayed and creating inefficiencies in the court's use of its own time. The culpability of Mr. Rogers is also clear. As we discussed in affirming the denial of a continuance, he could have prepared for trial despite being incarcerated; at the least, he could have advised the court of his incarceration so that the court could prepare its schedule properly.

As for the fourth factor, the district court had not warned Mr. Rogers that it would dismiss the case for failure to prosecute. But such a warning is not a *sine qua non* for dismissal. On the contrary, "no notice of any type need be given by the court prior to dismissal." *Stanley v. Cont'l Oil Co.*, 536 F.2d 914, 917 (10th Cir. 1976) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 632–33 (1962)). As we recently explained, "constructive notice—that is, notice (1) without an express warning and (2) objectively based upon the totality of the circumstances (most importantly, the trial court's actions or words)" is sufficient. *Ecclesiastes 9:10-11-12, Inc.*, No. 05-4192, 2007 WL 2285901, at *13. Mr. Rogers received such constructive notice. The district court had issued a show-cause order on June 22, 2006, noting that there had been no filings in the case since the amended scheduling order on December 2, 2005; requiring a report "indicating the parties' further intentions to proceed with this case"; and warning that "[f]ailure to file this status report with the court may result in dismissal of the complaint." R. Doc. 13. And Mr. Rogers's motion for continuance conceded his failure to prosecute, saying that he "cannot properly prosecute his case because he is currently incarcerated." *Id*. Doc. 16. Perhaps more warning would be appropriate before dismissal in other circumstances; but the need to prosecute one's claim (or face dismissal) is a fundamental precept of modern litigation, certainly known to every competent attorney.

Finally, with respect to the "efficacy of lesser sanctions," *Olsen*, 333 F.3d at 1204 (internal quotation marks omitted), no appropriate lesser sanction occurs to us, and Mr. Rogers has never suggested any. We therefore hold that dismissal was not an abuse of discretion.

## IV.   MOTION TO RECONSIDER

Within ten days following the district court's order dismissing the complaint without prejudice and closing the case, Mr. Rogers filed a motion for reconsideration under Rules 59(e) and 60(b) of the Federal Rules of Civil Procedure. The court denied the motion. We review for an abuse of discretion. *See Computerized Thermal Imaging, Inc., v. Bloomberg*, 312 F.3d 1292, 1296 n.3 (10th Cir. 2002).

We will not reverse the decision denying a motion under Rule 59(e) "unless the district court made a clear error of judgment, or exceeded the bounds of permissible choice in the circumstances. . . . The abuse of discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." *Loughridge v. Chiles Power Supply Co.,* 431 F.3d 1268, 1275 (10th Cir. 2005) (internal quotation marks omitted). As to the denial of a Rule 60(b) motion, "in determining whether a district court abused its discretion, we are mindful that relief under Rule 60(b) is extraordinary and may only be granted in exceptional circumstances." *Allender v. Raytheon Aircraft* Co., 439 F.3d 1236, 1242 (10th Cir. 2006) (brackets and internal quotation marks omitted).

The grounds for reconsideration were that Mr. Rogers had a new anticipated release date of August 24, 2006, and he could now attend the trial. To support this claim, his lawyer attached a handwritten note from Mr. Rogers in which he stated that "I am being released 9/1/06." Aplt. App. at 34. He explained, "Unfortunately, counsel did not receive this correspondence prior to seeking the continuance, or he would not have done so." *Id*. at 29. He argued that because the "court [was] misinformed as to the actual facts[,] . . . to allow the dismissal to stand, despite [Mr. Rogers's] release, would [e]ffect a manifest injustice." *Id*. There was no mention of how Mr. Rogers planned to complete preparation of the case in the time between his projected release date and the trial date, which was less than two weeks.

The district court did not abuse its discretion in denying the motion for reconsideration. Mr. Rogers's motion to continue had requested an extension for "90 to 120 days," *id*. at 4, because it was "unlikely" that he would be released in time for trial. R. Doc. 14 at 2. More to the point, the motion hinged not on his release date, but on his alleged inability to "prosecute his action because he is currently incarcerated in the state of Texas." Aplt. App. at 4. As the court observed, Mr. Rogers had offered several potential release dates, none of which actually occurred, and it "is unwilling to rearrange its calendar based on Mr. Rogers' anticipated release until he is actually released." *Id*. at 37. Further, the court had already struck the trial date:

The court has now placed a number of pressing criminal and civil hearings in the time that it previously scheduled for his trial. It would be quite burdensome to the court – and to the attorneys and litigants in those cases – to reschedule those new matters. Moreover, even if the trial date were to be reinstated, Mr. Rogers has not clearly demonstrated that he would be ready to proceed with the trial, given the very limited amount of preparation that seems to have been done.

*Id.*

## V.    CONCLUSION

The judgment of the district court is AFFIRMED.